### Supreme Court—General Term—Fourth Department.

*September,* 1885.

### PEOPLE *v.* DISHLER.

#### PERJURY—MISTAKE—PENAL CODE, § 96.

To sustain a conviction of perjury under section 96, Penal Code, it is essential that the testimony given should be false, and known to be such, or not known to be true, though so alleged. If the witness testified under an honest mistake or misapprehension and honestly believed what he testified to be true, a conviction cannot be had.

APPEAL from a judgment of conviction in the Court of Sessions of Onondaga county, December 27, 1883, Hon. A. J. NORTHRUP presiding, by which defendant was found guilty of the crime of perjury, and from an order denying a motion on behalf of the defendant to set aside the proceedings and trial

herein, and in arrest of judgment, and from an order denying a new trial on the minutes.

The indictment was found in May, 1883, and charges that at a Court of Oyer and Terminer held in the county of Onondaga, January 19, 1883, an indictment was found against one Joseph Parish and two others for grand larceny in the first degree, committed at Syracuse on December 29, 1882; that on the same day the indictment was remitted to the next Court of Sessions of Onondaga county; that Parish was arraigned and plead not guilty; that he was tried and found guilty in said court April 24, 1883; that the defendant, Dishler, was called and duly sworn, &c., and gave material testimony on that trial in behalf of Parish, and among other things, as the indictment herein alleged, testified as follows: "I (meaning him, the said David A. Dishler), recollect in the latter part of December last (meaning in the year 1882) of seeing Mr. Parish (meaning him, the said Joseph Parish) on Friday, the day of the month was the 29th day of December (meaning the 29th day of December, 1882), I (meaning him, the said David A. Dishler) should judge the time of day I (meaning him, the said David A. Dishler) first saw him (meaning the said Joseph Parish) to be about 10 o'clock in the morning (meaning 10 o'clock in the morning of the 29th day of December, 1882), I (meaning him, the said David A. Dishler) saw him (meaning the said Joseph Parish) at Bagg's hotel; . . . . Mr. Parish (meaning the said Joseph Parish) took dinner with me (meaning him, the said David A. Dishler) on that day (meaning the 29th day of December, 1882); Mr. Parish (meaning the said Joseph Parish) took dinner with me (meaning him, the said David A. Dishler) at Miss Coleman's, a private restaurant close by Bagg's hotel on Main street; . . . . I (meaning him, the said David A. Dishler) left this restaurant between the hours of one and two with Mr. Parish (meaning the said Joseph Parish)." Other details of defendant's testimony concerning the presence of Parish in Utica on December 29, 1882, were given in the indictment, which then proceeded: "Whereas, in truth and in fact he, the said David A. Dishler, did not recollect, in the latter part of December last (meaning the year 1882), of seeing Mr. Parish (meaning him, the said Joseph Parish) on

Friday the 29th day of December (meaning the 29th day of December, 1882), aforesaid." Other allegations specifically negatived the alleged evidence of said Dishler, so given on the trial as aforesaid, and the indictment concluded that said Dishler " did unlawfully, corruptly, willfully, falsely and feloniously, then and there commit willful and corrupt perjury against the form of the statute in such case made and provided," &c.

HARDIN, P. J.—Section 96 of the Penal Code, relates to the crime of perjury. It says: "A person who swears, or affirms, that he will truly testify . . . . in an action or a special proceeding . . . . and who in such action or proceeding, or on such hearing, inquiry or other occasion, willfully and knowingly testifies, declares, deposes or certifies falsely in any material matter, or states in his testimony, declaration, deposition or certificate, any material matter to be true which he knows to be false, is guilty of perjury."

Section 101 of the Penal Code is as follows: "An unqualified statement of that which one does not know to be true, is equivalent to a statement of that which he knows to be false." This latter provision is new, however. It was held in People v. McKinney (3 *Park.* 510), that a person might commit perjury by testifying to something true, in fact, though he did not know whether or not it was true. See, also, Commonwealth v. Cornish, 6 *Binney* (*Pa.*) 249.

In the body of the charge, the court stated the general principles of law applicable in the trial of a case of perjury. The case states, namely: "At the close of the charge, the counsel for the prisoner took the following exceptions to the said charge and to the following portions thereof, and said prisoner's counsel also thereupon requested said court to charge the jury as follows, and took and entered the following exceptions to the following refusals of said court to charge as requested." Then follows several requests, and among them the case states as follows, viz.: "I ask your honor to say that willfully and knowingly swearing falsely consists in stating a thing to be true, without probable cause to believe it to be true." The COURT—"I refuse, because the statute is a little different from that." Exception taken by defendant's counsel. "I ask your

honor to charge that if, after investigating this matter, as the evidence shows, he did——" The COURT—"I decline to hear any more requests to charge, because the jury were called back simply to hear your exceptions to the charge." Prisoner's counsel then said: "If, after investigating the matter, as the evidence shows he did by inquiry of the young lady who made the memorandum in the dining-room, and the coroner, he honestly believed that that was the day, that then, in testifying to it, he cannot be convicted of perjury for doing it." The COURT—"This is not pertinent to what I have added; I decline to charge it; it is not pertinent to the case, and not the proper time to ask it. Exception taken by defendant's counsel. The said cause was thereupon submitted to the jury, who, upon the same day, returned into court the same day and rendered their verdict."

*First.* The case fails to state the jury had retired from the bar prior to the proceedings, requests, refusals and exceptions quoted.

*Second.* So far as the case discloses, the exceptions were timely and orderly. There is not shown in the case any foundation for the refusal to hear any more requests to charge.

The remark was calculated to dissuade the prisoner's counsel from making further requests, though it does not seem to have put a full quietus upon the defendant's counsel.

It appears by the evidence of Edwina Long that she kept a book in the restaurant, spoken of in the evidence of appellant, and that there appeared as of the date of December 29, 1882, an entry indicating that "Dishler and a stranger" were at the restaurant. She further testified that "Dishler came to see me to inquire of me, whether I recollected of Mr. Parish and he being there before the trial about three weeks." She also testified: "I saw Parish on the trial here; I think that was the man I entered as the stranger."

Dr. Hunt, who was a coroner in 1882, was sworn as a witness, and testified that he held an inquest on the body of Samuel Bartlett the 29th day of December, and made an entry in his book, and he added: "I remember Mr. Dishler coming in to see me some time before the trial here last April, in reference

to the date of the inquest; on that occasion I took the book out and opened it and read from the book;" the request pointed to the inquiry made by the appellant of Long and Dr. Hunt, and pointedly asked the court to instruct the jury that if the appellant, after such investigation, "honestly believed that that was the day, that then, in testifying to it, he cannot be convicted of perjury for doing it." To that request, as we have already shown by the quotation from the case, the learned trial judge replied: "That is not pertinent to what I have added; I decline to charge it; it is not pertinent to the case, and not the proper time to request it." The evidence quoted was sufficient to call for the consideration of the question by the jury, as to whether or not the appellant, after the investigation made, did not honestly, and in good faith, believe that the 29th of December, 1882, was the day that he and Parish were at the restaurant together.

We think the learned trial judge fell into an error when he said, in response to the request, "It is not pertinent to the case." That remark may have led the jury to conclude that it was not important for them to consider whether or not the appellant, when he gave his evidence as seeing Parish in Utica on the 29th of December, "honestly believed that was the day." Archibald says, in 3 *Waterman's Notes*, 595, viz.: "The false statement must have been willfully made, for if a man swear falsely from inadvertence or mistake, it is no offense." Hawkins says: "It is said no oath shall amount to perjury unless it be sworn absolutely and directly, and that, therefore, he who swears a thing, according as he thinks, remembers or believes, cannot, in respect of such an oath, be found guilty of perjury." 3 *Archibald*, 595. Lord C. J. DE GRAY said that a person may be convicted of swearing that he "*thinks* or *believes* a fact to be true," but that it renders the proof more difficult. See note, 3 *Archibald*, 596. The Revised Statutes (2 *R. S.* 681) provides, that "Every person who shall willfully and corruptly swear, testify or affirm falsely to any material matter . . . . shall, upon conviction, be adjudged guilty of perjury." The language of section 96 of the Penal Code differs some in phraseology, and uses the words "willfully and knowingly," instead of the words

"willfully and corruptly." Under either section it is essential that the testimony given should be false, known to be such, or not known to be true, though so alleged, and that in the former case the falsity be known and the falsity intentionally asserted. An honest mistake, an honest misapprehension, may lead a party to mistakenly testify untruly as to a fact, when there is the utmost good faith and integrity of purpose. In this case, as in others arising under the criminal law, it is important that the jury be left to inquire what was the intention of the party accused of crime; the question of intention is one for the jury, under proper instructions, as to the law. The jury are, by the law, the sole judges of the facts. *Code Crim. Pro.* §§ 419, 420.

The request refused was pertinent and proper, and it was not proper to deny it. The verdict ought to be set aside. If the court had refused the request, and declined to charge otherwise than as it previously charged on the question, the charge would have been sound. When a jury has been correctly instructed in the body of the charge, a refusal to repeat presents no error.

The judgment and order should be reversed, and a new trial ordered in the Onondaga County Sessions.

FOLLETT and VANN, JJ., concur.

Judgment and order reversed, and a new trial ordered in the Onondaga Court of Sessions.